UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR MONEY LAUNDERING INVESTIGATION | ML No: 22-645 |

Reference:    DOJ Ref. # CRM-182-72437

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Peru. In support of this application, the United States asserts:

RELEVANT FACTS

1. The Central Authority of Peru, Office of the Attorney General, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 – Feb. 28, 2006, S. Treaty Doc. No. 105-25 (the Treaty).

2. As stated in the Request, the Second Corporate Supra-District Attorney's Office with Jurisdiction over Money Laundering, in Peru, is investigating Jose Luis Nortega Ludwick

(Ludwick) and others (hereinafter, the conspirators) for money laundering and crimes against public order and conspiracy, which occurred between in or about 2002 and 2014, in violation of the criminal law of Peru, specifically, Section 317 of the Peruvian Criminal Code and Legislative Order for the Effective Fight against Money Laundering and Other Crimes related to Illegal Mining and Organized Crime (April 19, 2012). Under the Treaty, the United States is obligated to assist in response to the Request.

3. In June 2018, Peruvian authorities began a preliminary investigation into the conspirators. Ludwick is being investigated for his participation as a lawyer of a Peruvian criminal organization, Clan Orellana, because he allegedly received several illicit payments in exchange for legal services provided to Clan Orellana.

4. According to Peruvian authorities, Clan Orellana, the largest criminal organization in Peru's existence, was comprised of more than 300 people, mostly lawyers, who illegally obtained large amounts of money to the detriment of many individuals and the Peruvian state. Rodolfo and Ludith Orellana Rengifo (Rengifos) are the leaders of Clan Orellana. From 2002-2014, they devised a complicated money laundering scheme in which they used lawyers and other members of the organization to create shell companies and pose as "front men" in illegal businesses to launder money and hide the illegal purpose of Clan Orellana's criminal network.

5. Specifically, the Rengifos created and used a group of shell companies called "Grupo Orellana" to conceal the illicit activities. During the twelve-year period, the Rengifos and other co-conspirators used various methods to generate more than 540,000,000 million soles (approximately 134,406,000,000,000 USD) in illicit money. Using several shell companies, they operated real estate businesses, provided legal services, paid bribes to obtain favorable decisions from government officials, issued fraudulent letters of guarantee through the Savings and Credit Union for Exporting Companies (COOPEX), and laundered illicit assets to capitalize the illegal

businesses of the money laundering scheme.

6. COOPEX was a shell company created by "Clan Orellana" and was used for issuing fraudulent letters of guarantee in exchange for commissions from private business owners. The private business owners, with the fraudulent letters of guarantee, obtained contracts from the Peruvian government, and in many instances, the companies did not provide the business services that the contracts described.

7. Ludwick worked alongside Rodolfo Orellana, the head and leader of the criminal organization and general manager of COOPEX. During the investigation, Peruvian authorities learned that Ludwick was a trusted lawyer in charge of the real estate businesses of Clan Orellana. Ludwick, chairman of the COOPEX Board of Directors, was paid 50,000 USD for legal services, which included unlawfully purchasing real estate, creating false title of real estate, and issuing fraudulent letters of guarantee through COOPEX. To identify additional "front men" of Clan Orellana, Peruvian authorities interviewed Luz Elena Gamarra Gagliardo (Gagliardo), Ludwick's wife. Gagliardo revealed that she, due to being an employee at the International Labor Office, has a savings account, account number xxxxxxxx0001, at the United Nations Federal Credit Union (UNFCU) in the United States. Additionally, she explained that she opened the bank account in anticipation of obtaining a loan with a reasonable interest rate. Instead, she borrowed funds from another financial institution.

8. Based upon Ludwick's participation and level of involvement in COOPEX, Peruvian authorities are investigating the UNFCU bank account to determine if Ludwick, through the influence over the account holder, his wife, Gagliardo, is an account holder with authority to facilitate transfers to the UNFCU bank account located in the United States. Specifically, Peruvian authorities are requesting records that describe the type of account. Additionally, they seek to obtain records that identify the holder(s)/owner(s) of the account and describe the authority of the holder(s)/owner(s) over the funds in the bank account.

9. To further the investigation and identify additional Clan Orellana co-conspirators, Peruvian authorities have asked U.S. authorities to provide bank account records pertaining to Gagliardo's aforementioned bank account at UNFCU in the United States.

## LEGAL BACKGROUND

10. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral convention is a treaty under U.S. law.

11. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*           \*           \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*           \*           \*

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

12. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

13. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4]  Upon

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)--(b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

14. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents. The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

REQUEST FOR ORDER

15. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Office of the Attorney General, the designated Central Authority in Peru, and seeks assistance in the

---

[5] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

investigation of money laundering – a criminal offense in Peru. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

16. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

17. When executing a foreign request for assistance in a criminal matter, Section 3512 authorizes the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

18. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned

to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence and authorizing the undersigned to order the relevant person(s) and/or entity(ies) not to notify any person(s) or entity(ies) of the commissioner's subpoena and its contents for a period of two years from the Court's Order, and sealing this application and the Court's Order, until otherwise issued by the Court.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: *Angela S. George*

Angela S. George, Trial Attorney
D.C. Bar Number 470567
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-4653
Angela.George@usdoj.gov